**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **BABRY HANAN,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:05cv1062** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**MEMORANDUM OPINION**

This suit is the latest chapter in plaintiff's determined, long-term effort to avoid deportation to his native Afghanistan and remain in this country. In this petition, he invokes Rule 60(b), Fed. R. Civ. P., and the All Writs Act,[1] specifically the writs of *coram nobis* and *audita querela*–all for the purpose of obtaining vacatur of a 22-year old importation of heroin conviction, which is the principal reason for his deportation. In support of his petition, petitioner offers affidavits purporting to show (i) that he was innocent of the crime for which he was convicted; and (ii) that both he and his family will face extreme hardship if he is deported to Afghanistan. Accordingly, the question presented is whether these affidavits are sufficient, under either Rule 60(b) or the All Writs Act, to justify expunging from his record his criminal conviction for heroin importation with intent to distribute.

**I.**

Babry Hanan ("Hanan"), an Afghani citizen, entered the United States in 1980 from

[1]Codified as 28 U.S.C. § 1651

Afghanistan. His friend and original co-defendant, Abdul Samad ("Samad"), also an Afghani, arrived in the United States in 1981. In this country, Hanan worked as a taxi cab driver, while Samad worked various odd jobs, although at the time of their arrest in 1983 Samad was unemployed. At all pertinent times, Hanan and Samad shared an apartment on South Whiting Street in Alexandria, Virginia.

On January 4, 1983, United States customs officials intercepted a package at Kennedy International Airport addressed to "M. Amin" at Hanan's and Samad's Whiting Street apartment. The package contained a shirt with 22 grams of heroin sewn in the collar. On January 11, 1983, at the behest of the Drug Enforcement Agency ("DEA"), a local courier service made a controlled delivery of this package to the Whiting Street apartment. When Samad answered the door, the courier informed him he had a package for "M. Amin." Samad, who did not speak English fluently, said "yes," and asked if a signature was required. The courier responded that none was necessary. After receiving the package, Samad handed it to Hanan, who then opened it. Samad then left the room. Within moments, DEA agents, who had been monitoring the delivery, knocked on the door. Hanan placed the heroin under a rug before the DEA agents entered. Although he initially denied that the package contained any illicit substance, Hanan eventually told the agents they could find the heroin under the living room rug. Based on this evidence, a jury on April 1, 1983 convicted both Hanan and Samad of unlawfully importing heroin with intent to distribute. Hanan was sentenced to three years of incarceration and three years of special parole. Both Hanan and Samad thereafter appealed their convictions. Samad's conviction was reversed on the ground that there was insufficient evidence to support a finding by a reasonable jury that Samad was aware that the package in question contained heroin. *See*

*United States v. Samad*, 754 F.2d 1091, 1098-99 (4th Cir. 1984). Hanan did not fare as well in his appeal; by contrast, the Court of Appeals held that there was sufficient circumstantial evidence to support the inference that Hanan knew the package contained drugs, and accordingly, Hanan's conviction was affirmed. *Id.* at 1099.[2]

Following his release from prison on November 10, 1984, the Immigration and Nationalization Service ("INS") attempted to deport Hanan to Afghanistan on account of his conviction, but was unable to do so because of Afghanistan's unstable political climate at that time. Although unable to deport Hanan immediately, the deportation order remained in effect, Hanan was placed on supervised release. In 1996, Hanan petitioned INS to lift his order of deportation. This effort failed when the INS denied the petition on February 12, 1997. On May 15, 1997, Hanan tried again; he filed for relief from deportation under Article 3 of the United

[2] In the words of the Court of Appeals:

> Hanan, unlike Samad, opened a package not addressed to him or to anyone he knew. Although Hanan testified that he was looking for a letter that might identify the proper addressee, the jury was free to conclude otherwise. Second, although Hanan testified that the heroin pouch simply fell out when he lifted the shirt, the jury could reasonably find that Hanan had prior knowledge of the heroin's secreted location. Agent Lee testified that the DEA placed the bag "out of the view of anyone who would open the package without looking for it," and that, upon their entry into the apartment, the agents found "the collar standing up." The jury could also find that Hanan lied to the DEA agents when asked about the location of the package. Agent Lee testified that Hanan initially denied knowing anything about the parcel, but, upon further inquiry, told the agents where it was. Finally, the jury had before it evidence that Hanan tried to conceal what he claimed to be only "brown powder," by kicking the heroin packet underneath the rug before the agents entered the room. This evidence, relevant only to the government's case against Hanan, was sufficient to present a jury question as to Hanan's guilt. We therefore reject Hanan's assertion that there was insufficient evidence to convict him.

Nations Convention Against Torture ("Convention"),[3] which prohibits, *inter alia*, removal of an individual to a country where he would be subject to torture. This effort also failed, as the INS denied this petition for relief on October 23, 2002, and the Board of Immigration Appeals affirmed this result in April 2004. In May 2004 and August 2004, INS notified Hanan by letter that it intended to deport him to Afghanistan by August 10, 2004. This notice precipitated two responses.

First, on August 9, 2004, Hanan, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255 in Minnesota federal district court. That petition is currently pending. The Minnesota court filed a temporary stay of deportation enjoining INS from deporting Hanan during the pendency of his habeas petition.[4] Hanan also filed this suit seeking vacatur of his heroin importation conviction in this district, hoping to have the conviction vacated and expunged, thereby eliminating the predicate ground for his deportation. As noted, petitioner supports his claim for relief with several affidavits from himself, his family members, and others.[5] Each of these affidavits attest to (i) Hanan's good character; (ii) Samad's poor character; (iii) the hardship Hanan and his family will suffer if he is deported to Afghanistan, and (iv) the

---

[3]*See* Omnibus Consolidation and Emergency Supplemental Appropriations Act of 1999, Pub. L. No. 105-277, § 2242, 112 Stat. 2681, 2681-822; Regulations Concerning the Convention Against Torture, 64 Fed. Reg. 8478 (INS Feb. 19, 1999) (codified at 8 C.F.R. §§ 1208.16-1208.18 (2005)).

[4]The parties have not included a copy of this Order in their materials, nor does it appear to be available online.

[5]There are, in total, six affidavits or declarations, two of which are by Hanan. In addition there are affidavits by: (i) Farid Urdu, a friend of Hanan; (ii) Mir Waise Aziz, also a friend of Hanan; (iii) Nazifa Janetkhan, Hanan's wife; and (iv) Hadia Hanan, Hanan's daughter. Although Hadia Hanan's affidavit is unsworn; it will be treated as a declaration.

ties Hanan and his family have to each other, their community, and the United States.

With respect to Samad's character, Babry in his supplemental affidavit alleges, *inter alia*, (i) that while incarcerated, Samad blackmailed his brother for $2,000;[6] and (ii) that during their incarceration, Samad threatened Hanan that he would implicate Hanan's family members and girlfriend at the time as co-conspirators in the drug trade if Hanan were to recant his statement to police that Hanan and Samad together opened the package containing heroin together.

Hanan claims that the affidavits of Farid Urdu ("Urdu") and Mir Waise Aziz ("Aziz") support his actual innocence claim because they demonstrate, in his view, that Samad alone was culpable with respect to the drug crime for which he Samad were convicted, and for which Hanan now faces deportation. In his June 20, 2005 affidavit, Urdu stated that he met Samad by chance at a party in Hamburg, Germany in 2003. Urdu further states that when their conversation turned to Hanan, Samad said (i) that he, not Hanan, was guilty of the heroin importation crime for which they were both convicted; and (ii) that it was unjust that Hanan, an innocent man, spent time in prison, while Samad's conviction was overturned and he was set free. In his November 10, 2004 affidavit, Aziz states that he is convinced of Hanan's innocence based on his conversations with Urdu in June or July of 2004, during which Urdu told Aziz of his 2003 encounter with Samad.

The question presented is whether Hanan's petition and supporting affidavits entitles him to the relief he seeks under Rule 60(b) or the writs of *coram nobis* or *audita querela*.

---

[6] This allegation is not based on Hanan's personal knowledge; it is based on hearsay information received from Ali Mohamad Bigzad, a mutual acquaintance of Hanan and Samad, who told Hanan that Samad was blackmailing his brother. It is unclear how Bigzad came by this information.

**II.**

In a 1946 amendment to Rule 60, Fed. R. Civ. P., Congress abolished several common law writs, including *coram nobis* and *audita querela*. Rule 60 stated in pertinent part:

> Writs of coram nobis, coram vobis, audita querela, and bills of review, and bills in the nature of a bill of review, are abolished, and the procedure shall be by motion as prescribed in these rules or by an independent action.

Notwithstanding the plain language of Rule 60, the Supreme Court eight years later in *United States v. Morgan*, 346 U.S. 502 (1954), held that the All Writs Act, codified at 28 U.S.C. § 1651(a), authorized courts to hear petitions for a writ of *coram nobis*.[7] *Morgan* teaches that federal courts may properly fill the interstices of the federal post-conviction remedial framework through remedies available at common law, including, *inter alia*, writs of *coram nobis* and *audita querela*. *See United States v. Ayala*, 894 F.2d 425, 428 (D.C. Cir. 1990). Accordingly, in this circuit and elsewhere, litigants properly may pursue both a writ of *coram nobis* and a writ of *audita querela*.

While courts' authority to grant writs of *coram nobis* and *audita querela* flows from a common source, the All Writs Act, these writs are not identical. A writ of *coram nobis*[8] is typically used to attack a judgment that was infirm at the time it issued for reasons that later came to light. By contrast, a writ of *audita querela*[9] is used to challenge a judgment that was correct at

---

[7]Given that all Rules amendments and Advisory Committee notes must be received and approved by the Supreme Court before they became effective, one might reasonably ask how this amendment passed without comment. *See* 28 U.S.C. § 2072.

[8]Literally, *coram nobis* means "before you." BLACK'S LAW DICTIONARY (8th ed. 2004)

[9]Literally, *audita querela* means "the complaint having been heard." BLACK'S LAW DICTIONARY (8th ed. 2004)

the time is was issued, but which was rendered infirm by matters which arose after its issuance. *See United States v. Reyes*, 945 F.2d 862, 863 n.1 (5th Cir. 1991) (contrasting writs of *coram nobis* and *audita querela*). Given this and the facts presented, a writ of *coram nobis* clearly is the more appropriate vehicle to challenge Hanan's heroin importation conviction; Hanan has always maintained his innocence, but only recently obtained the information he now presents in support of his innocence claim. Accordingly, Hanan's motion is properly treated as a petition for writ of *coram nobis*.

A writ of *coram nobis* is available to correct errors "of the most fundamental character" that have occurred in a criminal proceeding. *Morgan*, 346 U.S. at 512. Indeed, it may issue only to correct errors "resulting in a complete miscarriage of justice." *Jimenez v. Trominski*, 91 F.3d 767, 768 (5th Cir. 1996). Thus it does not matter whether the convicted person is in custody; it is well established that the writ will lie where the convicted person is not in custody, either because he has completed his sentence or because he has not yet begun to serve it. *See Morgan*, 346 U.S. at 510; *United States v. Hay*, 702 F.2d 572 (5th Cir. 1983); 18 Am.Jur.2d Coram Nobis § 8 (1985). In sum, then, to obtain *coram nobis* relief, Hanan must show (i) that his conviction or sentence involved an error of the most fundamental character; (ii) that it is probable that a different result would have occurred if not for the error; (iii) that adverse consequences continue to flow from the conviction such that a case or controversy exists within the meaning of Article III; (iv) that a more usual remedy is not presently available to correct the error; and (v) that sound reasons exist for not challenging the error earlier, such as by direct appeal or § 2255 motion. *Scates v. United States*, 914 F.2d 249 (4th Cir. 1990) (unpublished opinion); *Hirabayashi v.*

*United States*, 828 F.2d 591, 604 (9th Cir. 1987).[10]

Importantly, it is settled that a court reviewing a petition for a writ of *coram nobis* to vacate a conviction must presume that the underlying proceedings were correct, and the burden of showing otherwise rests on the petitioner.[11] And, that burden is substantial, exceeding that of a habeas petitioner.[12] This heavier burden is justified in *coram nobis* proceedings, because where, as here, a petitioner has completed his sentence, the government is unlikely to allocate scarce prosecutorial resources to retry a defendant who will not be resentenced. Thus, unlike a habeas proceeding, society's interest in preserving a valid conviction is greatly diminished, as there is no sentence to be completed. *See U.S. v. Keogh*, 391 F.2d 138, 148 (2d Cir. 1968) (citing prosecution's diminished interest in *coram nobis* proceeding relative to habeas proceeding). Courts have properly recognized that, were *coram nobis* relief granted with any regularity, courts would be overrun with endless relitigation of criminal convictions. *See id.* (noting that were

---

[10]The second of the five elements was not mentioned in the unpublished Fourth Circuit opinion in *Scates*, which relied on *Hirabayashi*. The Ninth Circuit panel in *Hirabayashi* found it was unnecessary to decide whether a *coram nobis* petitioner must show that it is probable the error made a difference in the outcome. *See* 828 F.2d at 604 n.14. Yet, as several circuit courts have recognized, it is obvious that if *coram nobis* reaches only errors "of the most fundamental character," *Morgan*, 346 U.S. at 512, it clearly does not reach errors that have no material effect on the proceeding. *United States v. Dellinger*, 657 F.2d 140, 144 n.9 (7th Cir. 1981); *Bateman v. United States*, 277 F.2d 65, 68 (8th Cir.1960).

[11]*See, e.g.*, *United States v. Morgan*, 346 U.S. 502, 512 (1954); *U.S. v. Mandanici*, 205 F.3d 519, 524 (2d Cir. 2000); *Foont v. U.S.*, 93 F.3d 76, 78-79 (2d Cir. 1996)

[12]*See, e.g.*, *U.S. v. Stoneman*, 870 F.2d 102, 106 (3d Cir. 1989) (stating that the burden placed on a petitioner seeking writ of *coram nobis* exceeds burden on habeas petitioner); *Jimenez v. Trominski*, 91 F.3d 767, 768 n.6 (5th Cir. 1996) (same); *Mandel*, 862 F.2d at 1077 (Hall, J., dissenting) (same).

courts to grant coram nobis relief frequently, such petitions would be much more common).[13] Accordingly, successful *coram nobis* petitions in the federal courts are exceedingly rare, and have generally involved such fundamental defects as deprivation of counsel, as in *Morgan*, or coerced guilty pleas. *See Keogh*, 391 F.2d at 148. Although some circuits have held that newly discovered evidence is never sufficient to warrant *coram nobis* relief, the Fourth Circuit has not adopted such a categorical rule. *Compare U.S. v. Mills*, 221 F.3d 1201, 1204 (11th Cir. 2000) (newly discovered evidence cannot constitute fundamental error) *with U.S. v. Farkas*, 867 F.2d 609, **1 (4th Cir. 1989) (considering newly discovered evidence in resolving petitioner's *coram nobis* petition). To obtain habeas relief on the basis of actual innocence, a petitioner seeking relief must show that no rational trier of fact could find guilt beyond a reasonable doubt had it been given access to the newly discovered evidence. See *Jackson v. Virginia*, 443 U.S. 307 (1979) (White, J. concurring). And, it appears that the Fourth Circuit has adopted this standard in analyzing claims for habeas relief based on newly discovered evidence. *See Hunt v. McDade*, 2000 WL 219755, at *2 (4th Cir. 2000) (unpublished opinion). Accordingly, the question is

---

[13] *See also Moody v. U.S.*, 874 F.2d 1575, 1577 (11th Cir. 1989) ("The writ of error coram nobis, therefore, cannot be available for new evidence only potentially relevant to a factual issue decided long ago by a jury for, if it were, the limitations of Rule 33, [Fed. R. Crim. P.] would be meaningless and the writ would no longer be extraordinary. More troublesome still, such a remedy would prolong litigation once concluded, thus thwarting society's compelling interest in the finality of criminal convictions."); 33 A.L.R. 84 ("If the writ of coram nobis were allowed on the ground of newly discovered evidence, after judgment, the defendant might discover or fabricate evidence that would have been material on the trial. It would be necessary for him only to obtain the writ of error coram nobis, assign errors in fact, and proceed to try the whole matter over again. Such a practice would render the validity of the judgments of the courts too uncertain to comport with sound policy, safety, or public convenience, and cannot be sustained.").

whether a reasonable jury could have found Hanan guilty in view of the evidence he now presents in support of his claim of innocence.

In this case, it is clear that Hanan arguably meets four of the five requirements for the issuance of a writ of *coram nobis*. Thus, it is arguably probable that Hanan would have been found innocent of heroin importation, if, at the time of the trial, Samad had taken full and sole responsibility for the heroin found by the DEA. And it seems clear that the adverse consequences of Hanan's conviction continue; it is unlikely that Hanan would face deportation but for this conviction. And, given that Hanan has completed his sentence, *coram nobis* is the proper avenue to challenge his conviction. *See United States v. Mandel*, 862 F.2d 1067, 1075 (4th Cir. 1988). Finally, because Hanan claims to have obtained the evidence of his innocence after completing his sentence, he could not have presented it on direct appeal or collateral review pursuant to 28 U.S.C. § 2255.

While Hanan may clear those hurdles and satisfy those *coram nobis* requirements, he stumbles on the first and most fundamental requirement; he cannot carry his burden to show that his conviction for heroin importation was fundamentally flawed. This is so because his claim of innocence is unconvincing; it is based on uncorroborated hearsay statements wholly lacking any indicia of reliability. Moreover, a jury that had before it these affidavits could nonetheless have found Hanan guilty, as there was ample evidence on which the jury reasonably could have concluded Hanan knew the package in question contained illicit substances. In an effort to overcome the strong presumption that his underlying conviction should not be disturbed, Hanan offers the affidavits of Urdu and Aziz to show that Samad alone was responsible for the crime for which they were both convicted. These affidavits do not, either individually or collectively,

demonstrate that Hanan's conviction was infected with fundamental error warranting vacatur. To begin, Aziz's statements regarding Hanan's innocence is based on inadmissible double hearsay; he believes Hanan is innocent based on what Urdu told Aziz about conversations Urdu had with Samad. Irrespective of its inadmissibility, however, Aziz's affidavit does not present any evidence of Hanan's innocence beyond the evidence Urdu presented in his affidavit.

With respect to Urdu's affidavit, Samad's statements to Urdu that he alone was culpable for importing the heroin are also inadmissible hearsay. Reliability concerns–a consideration with any hearsay statement[14]–are particularly acute here for several reasons. First, there is ample reason to believe that Samad did not make the exculpatory statements at issue. In his supplemental affidavit, Hanan states (i) that while incarcerated, Samad blackmailed his brother for $2,000; and (ii) that during their incarceration, Samad threatened Hanan that he would implicate Hanan's family members and girlfriend of involvement in the drug trade if Hanan were to recant his statement that Hanan and Samad opened the package containing heroin together.[15] Assuming the truth of these allegations, they hardly make it more likely that Samad would now make such a magnanimous gesture accepting all culpability for the crime.

But more importantly, even assuming Samad made the inculpatory statements reported by Urdu, there are two additional, related reasons to doubt their reliability. First, Samad likely

---

[14] *See, e.g.*, *Bourjaily v. U.S.*, 483 U.S. 171, 183 (1987) (noting that to be admissible, hearsay must, *inter alia*, have sufficient "indicia of reliability"); *Lee v. Illinois*, 476 U.S. 530, 543 (1986) (noting that hearsay not within any exception is "presumptively unreliable and inadmissible"); Rule 801, Fed. R. Evid. Introductory Note: The Hearsay Problem, A.C.N. 1972 Proposed Rules (listing reliability concerns as one reason underlying the presumption against admission of hearsay evidence).

[15] *See* Hanan Supp. Aff. at ¶¶ 19-20.

knows that he has nothing to fear from assuming, at this time, all responsibility for importing the heroin, as (i) he has already been tried for the offense in question and because his conviction was overturned, he cannot be retried; (ii) he lives abroad, beyond the jurisdiction of this country's legal system and courts; and (iii) the statute of limitation has long since run on this crime. *See* 18 U.S.C. § 3282 (statute of limitation for non-capital crimes is five years). Accordingly, Samad's statements do not qualify as a statement against interest pursuant to Rule 804(b)(3), Fed. R. Evid; Samad risks nothing by trying to help his old roommate escape deportation. Second, the timing of Samad's statements is more than suspect. The notion that Samad, having remained silent for more than twenty years, now volunteers a tell-all confession (i) to a passing acquaintance during a chance encounter (ii) shortly after an immigration court denied Hanan's petition to lift his deportation order (iii) and just months before Hanan is scheduled for deportation, strains credulity beyond belief. For all of these reasons, Urdu and Aziz's affidavits fall far short of demonstrating Hanan's innocence. In sum, therefore, Hanan has adduced no sufficient reason to overcome the strong presumption that his criminal conviction was properly decided.

Hanan also seeks *coram nobis* relief on account of the hardship he and his family would suffer if his conviction is not overturned and he is deported to Afghanistan. The short answer to this is that Hanan is statutorily precluded from relief on this ground because he has been convicted of an aggravated felony within the meaning of the Immigration and Naturalization Act. *See* 8 U.S.C. § 1229b (withholding discretion from Attorney General to cancel deportation of any alien convicted of an "aggravated felony"); 8 U.S.C. § 1101(a)(43)(B) (including illicit trafficking in a controlled substance as an aggravated felony). For this reason, Hanan is ineligible for *coram nobis* relief on this ground.

Hanan alternatively seeks relief pursuant to Rule 60(b), Fed. R. Civ. P. Although his petition for relief does not specify the subsection of the Rule on which he relies, Rule 60(b)(5) appears to be most apposite. Rule 60(b)(5), Fed. R. Civ. P., provides in pertinent part that:

> The court may relieve a party from a final judgment, order, or proceeding [if] ... the judgment has been satisfied, released, or discharged, or a prior judgment on which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.

The decision to grant or deny a Rule 60(b)(5) motion, as with all Rule 60 motions, is committed to the court's sound discretion.[16] While Rule 60(b)(5) motions may be brought at any time, Hanan, as the party seeking relief, bears the burden to show that his motion was filed within a reasonable time, and must offer a satisfactory explanation for any delay. *Central Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 253 (4th Cir. 1974). In an affidavit dated August 4, 2004, Hanan stated (i) that in approximately February 2004, an acquaintance[17] informed him that he had spoken with Samad in West Germany; (ii) that this acquaintance told Hanan that Samad had told him that Samad had known all along that the package he received at South Whiting Street contained heroin; and (iii) that, based on this evidence, Hanan intended to ask a judge to vacate his conviction based on actual innocence.[18] Yet, Hanan did not seek vacatur until September 2005, approximately 19 months later. Courts in this circuit have rigorously enforced this

---

[16] *See, e.g.*, *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 235 (1995); *Agostini v. Felton*, 521 U.S. 203, 236 (1997) (district court's decision on Rule 60(b) motion reviewed for abuse of discretion); *Heyman v. M.L. Mktg. Co.*, 116 F.3d 91, 94 (4th Cir. 1997) (same).

[17]The record is unclear whether this acquaintance was Farid Urdu.

[18]*See* Hanan Aff. at ¶¶ 5.

timeliness requirement, deeming untimely motions filed much more promptly than petitioner's.[19] Hanan has given no explanation for this delay in filing, to say nothing of an explanation sufficient to justify a delay of this magnitude. Accordingly, his Rule 60(b)(5) motion, Fed. R. Civ. P., must be denied as untimely.

Quite apart from the motion's untimeliness, it also lacks merit. Relief under Rule 60(b) is unwarranted for the same reasons stated previously with respect to Hanan's petition for *coram*

---

[19] *See, e.g.*, *Consol. Masonry & Fireproofing, Inc. v. Wagman Constr. Corp.*, 383 F.2d 249, 251 (4th Cir. 1967) (60(b) motion filed two and a half months after the judgment from which relief was sought denied as untimely); *McLawhorn v. John W. Daniel & Co.*, 924 F.2d 535, 538 (4th Cir. 1991) (upholding denial of 60(b) motion after a delay in filing of three and a half months); *Central Operating Co. v. Util. Workers of Am.*, 491 F.2d 245, 253 (4th Cir. 1974) (denied after a delay in filing of almost four months); *Jones v. Richmond*, 106 F.R.D. 485, 490 (E.D. Va. 1985) (denying as untimely a 60(b) motion filed "over three months" after movant received notice of grounds for the motion).

*nobis*. In the context of a motion seeking vacatur of a criminal conviction, the standard for relief must be the same irrespective of whether the motion is styled as a petition for writ of *coram nobis* or as a motion for relief from judgment pursuant to Rule 60(b), Fed. R. Civ. P. *See, e.g.*, *U.S. v. Fiorelli*, 337 F.3d 282, 287-88 (3d Cir. 2003) (stating that "the function of the motion, and not the caption, dictates which [procedural rule] is applicable) . Were a contrary result to obtain, the outcome of the motion might well depend on how the motion was styled rather than the strength of its supporting evidence.

For all of these reasons, Hanan's petition for relief must be denied. An appropriate order will issue.

Alexandria, Virginia
November 21, 2005

________________________
T. S. Ellis, III
United States District Judge